UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:22-CV-00375-GNS

BHARGAVARAM GUTHIKONDA et al.                                    PLAINTIFFS

v.

UR JADDOU, Director,
United States Citizenship and Immigration Services              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 12) and Plaintiffs'

Motion to Exceed Page Limit (DN 13).  The motions are ripe for adjudication.

## I.      BACKGROUND

Manik Kalra, Tarun Puri, Isha Mandrekar, Karan Khatwani, Nishant Gehani, Bhargavaram

Guthikonda, and Bipinkumar Naranbhai Sutariya (collectively "Plaintiffs"), are non-United States

citizens pursuing lawful permanent resident status by investing in designated Regional Centers to

qualify for immigrant visas under 8 U.S.C § 1153(b)(5).  (Compl. ¶ 2, DN 1).[1]  As part of the

process, Plaintiffs filed Forms I-526 Immigrant Petitions by Alien Entrepreneur ("I-526") with the

United States Citizenship and Immigration Services ("USCIS").  (Compl. ¶ 3).  Since the

Complaint was filed, three of the plaintiffs have stipulated to dismissal from the action, leaving

Plaintiffs Bhargavaram Guthikonda, Isha Mandrekar, Manik Kalra, and Nishant Gehani.

---

[1] Congress created the EB-5 visa program as part of the Immigration and Nationality Act ("INA")
to promote foreign investment and job creation.  8 U.S.C. § 1153(b)(5).  The program allots visas
to immigrants who have invested capital in specified ways that create full-time employment for
U.S. citizens. *Id.*

(Stipulation Dismissal, DN 11; Stipulation Dismissal, DN 24).  Plaintiffs filed their petitions between May through November 2019 which have yet to be adjudicated.  (Compl. ¶ 65, 83, 95, 101).  Plaintiffs initiated this action pursuant to 5 U.S.C. § 706(2)(A), asserting claims for unreasonable delay under the Administrative Procedure Act ("APA") as well as claims for equal access to justice fees, seeking to compel Defendant to adjudicate their visa petitions.  (Compl. ¶¶ 105-08, 131-34).  Defendant moves to dismiss the unreasonable delay claims.  (Def.'s Mot. Dismiss, DN 12).[2]  As a result, the sole dispute is whether the remaining Plaintiffs' unreasonable delay claims against USCIS are sufficiently pled.

## II.    **JURISDICTION**

The Court exercises subject-matter jurisdiction over this action based upon federal question jurisdiction.  28 U.S.C. § 1331.

## III.    **STANDARD OF REVIEW**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true," but it is not required to "accept a 'bare assertion of legal conclusions.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citations omitted).  A pleading offering only labels, formulaic recitations of a claim's elements, or generalized assertions

---

[2] Plaintiffs also move for leave to exceed the page limit in their response.  (Pls.' Mot. Exceed Page Limitation, DN 13 (citing LR 7.1)).  USCIS has not contested the motion, so it is granted.

without factual support does not meet this burden. *Iqbal*, 556 U.S. at 678. Facts "'merely consistent with' a defendant's liability" or that "do not permit the court to infer more than the mere possibility of misconduct" are inadequate, as it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678-79 (citations omitted).

Fed. R. Civ. P. 12(d) provides that, if "matters outside the pleadings are presented and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Court, however, "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein" without converting to summary judgment review. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## IV.   DISCUSSION

Defendant argues the Court should dismiss the Complaint because Plaintiffs have failed to state a plausible claim for reasonable delay under the APA based on the pleading standards of *Twombly/Iqbal*. (Def.'s Mot. Dismiss 11, DN 12)). Plaintiffs contend that they have pleaded plausible claims*,* that unreasonable delay claims require discovery before dismissal and that binding precedent compels this Court to deny the motion to dismiss as premature. (Pls.' Resp. Def.'s Mot. Dismiss 3, DN 14). Defendant replies that Plaintiffs "improperly seek to address the deficiencies in their Complaint by attaching more than 300 pages of documents to their Response." (Def.'s Reply Mot. Dismiss 4, DN 15 (citations omitted)). Because the general issue of what documents (if any) outside the pleadings the Court may consider impacts any decision on Defendant's Fed. R. Civ. P. 12(b)(6) motion, the Court will address that issue before the substantive merits of the motions to dismiss.

3

A.      **Matters Outside the Pleadings**

Plaintiffs attach six exhibits to their response to the motion to dismiss.[3]   Ordinarily, a district court may not consider matters beyond the complaint when reviewing a motion to dismiss. *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) (citation omitted). Considering evidence outside the complaint "effectively converts the motion to dismiss to a motion for summary judgment." *Id.* (citation omitted); *see also Kostrzewa v. City of Troy*, 247 F.3d 633, 643 (6th Cir. 2001).  The Court then must give the parties "a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion." Fed. R. Civ. P. 12(d).  However, "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Bank of Am., N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 2d 689, 697 (E.D. Ky. 2012) (quoting *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001)); *see also Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) ("[A] court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein.'"  (quoting *Bassett*, 528 F.3d at 430)). A court may also consider a document that is not formally incorporated by reference in a complaint or attached in a defendant' motion to dismiss if the complaint refers to the document, the document is central to the claims, and the document is not "insufficiently mentioned or tangential to a claim." *Finley v. Kelly*, 384 F. Supp. 3d 898, 908 (M.D. Tenn. 2019) (citations omitted).

---

[3] These exhibits are:  (1) Exhibit A - Table of I-526 Petition Adjudications (DN 14-1); (2) Exhibit B - Graph of I-526 Petition Adjudications (DN 14-2); (3) Exhibit C - Tryon Project Recent Approval Examples (DN 14-3); (4) Exhibit D - Affidavit of Matthew T. Galati and USCIS FOIA Letter (DN 14-4); (5) Exhibit E - FOIA Record Production (DN 14-5); and (6) Exhibit F - USCIS Online Case Status Examples (DN 14-6).

The court in *Finley* analyzed whether it could consider on a motion to dismiss a 79-page document not attached in the plaintiff's complaint or defendant's motion to dismiss.  The court noted that "[t]he Document is mentioned in the Amended Complaint no less than a dozen times, and quoted and described in detail."  *Id*.  The court also emphasized the complaint specifically "incorporated [t]herein by reference" the document.  *Id*.  Like in *Finley*, the six exhibits attached to Plaintiffs' response were not attached to the Complaint or Defendant's motion to dismiss. Unlike *Finley*, none of the exhibits are quoted or described in detail in the Complaint.

Exhibit A contains a summary of approximately 600 petition adjudications not attached to the Complaint or quoted or described in detail.  (Pls.' Resp. Def.'s Mot. Dismiss Ex. A, at 1-14, DN 14-1).  The Complaint alludes to the fact that "USCIS regularly adjudicates later-filed Forms I-526 prior to earlier-filed Forms I-526," and alleges that Plaintiff Bipinkumar Sutariya "is aware of many people with subsequent filing dates having their petitions adjudicated." (Compl. ¶¶ 79(a), 110(d)).  Exhibit B, a graph of the data in Exhibit A, is unreferenced in the Complaint.  (Pls.' Resp. Def.'s Mot. Dismiss Ex. B, at 1, DN 14-2).  These two exhibits are not properly before the Court and will be disregarded in analyzing the motion to dismiss.

As noted above, Exhibits C, D, and E are not attached to the Complaint or incorporated by reference.  Exhibit C consists of "redacted USCIS approval notices used as marketing by EB5Fast.com . . . ."  (Pls.' Resp. Def.'s Mot. Dismiss 13; Pls.' Resp. Def.'s Mot. Dismiss Ex. C, at 13-36, DN 14-3).  Exhibit E consists of hundreds of pages of records produced in response to a FOIA request by Plaintiffs' counsel.  (Pls.' Resp. Def.'s Mot. Dismiss Ex. E, at 1-238, DN 14-5). Exhibit D is an affidavit of Plaintiffs' counsel explaining the source of the documents in Exhibit E and a letter from USCIS responding to Plaintiffs' counsel's FOIA request.  (Pls.' Resp. Def.'s Mot. Dismiss Ex. D, at 1-6, DN 1-4).  The Complaint alleges that the "IPO issued an *ultra vires*

expedite to an EB-5 project which none of the Plaintiffs invested in . . . investors associated with that project were able to receive Form I-526 adjudications in approximately 90 days' time." (Compl. ¶ 126(c)).  Further, "USCIS will expedite all Forms I-526 for certain NCEs and regional centers, but not others.  There is no rule of reason controlling which NCEs get blanket expedites." (Compl. ¶ 110(b)).  These two statements, made without more factual support, do not 'incorporate by reference or describe in detail' the roughly 200 pages of email printouts in Exhibit E and the marketing notices in Exhibit C.  Exhibit D, the affidavit of Plaintiffs' counsel explaining the source of the documents in Exhibit E, is irrelevant without Exhibit E.  These three exhibits will be disregard in analyzing the motion to dismiss.

Exhibit F is fifteen petitions filed after, but decided before, Plaintiffs' petitions.  It is neither attached to the Complaint nor sufficiently mentioned to be incorporated by reference.  (Pls.' Resp. Def.'s Mot. Dismiss Ex. F, at 1-30, DN 14-6).  Even so, Plaintiffs also ask the Court to take judicial notice as the information comes from USCIS's official website.  The Court may take judicial notice of facts outside the pleadings.  *See, e.g.*, *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." (internal quotation marks omitted) (citation omitted)).  The Court will take judicial notice of the facts in Exhibit F.[4]

---

[4] Fed. R. Evid. 201 outlines the process for judicial notice of "adjudicative facts."  "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned."  *Preston v. Ky. Consular Ctr.*, No. 6:22-CV-015-CHB, 2022 WL 3593052, at *3 n.3 (E.D. Ky. Aug. 22, 2022) (citation omitted)).  A court may also take judicial notice of public documents and government documents because such sources "cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see, e.g.*, *Preston*, 2022 WL 3593052, at *3 (taking judicial notice of information presented on governmental websites).

The Court will also grant USCIS's request that it take judicial notice of the news release on USCIS's website regarding the process for managing EB-5 petitions.[5]

Finally, footnote 3 in Plaintiffs' response may be construed as a request to take judicial notice of the data in Exhibits A and B because it comes from a Telegram channel that "ostensibly uses data mining" to glean the data from USCIS's website. Unlike the information in Exhibit F, Exhibits A and B do not come from USCIS's website, but a third party. (Pls.' Resp. Def.'s Mot. Dismiss 11 n.3). Thus, Exhibits A and B are not from sources that "cannot reasonably be questioned," and the Court will not take judicial notice of them.[6]

## B.   Count 1 – Unreasonable Delay under the APA (5 U.S.C. § 555(b))

The APA allows the Court to compel agency action that has been "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also id.* § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."). "When resolving whether an agency action has been unreasonably delayed, the federal courts consider six factors from *TRAC v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) . . . ." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (citing *TRAC*, 750 F.2d at 80). The *TRAC* factors are as follows:

---

[5] *USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory* (release date: Jan. 29, 2020) ("EB-5 Processing Announcement"), available at https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory.

[6] Plaintiffs invite the Court to "independently use USCIS' 'my case status' tool to verify" the case status of each of these petitions by entering into USCIS's website the 600 13-character identifiers listed in Exhibit A, one at a time. (Pls.' Resp. Def.'s Mot. Dismiss 12 n.4). Plaintiffs also inform the Court that "[m]ore detailed information can be retrieved by creating an account on the website." (Pls.' Resp. Def.'s Mot. Dismiss 12 n.4 (citation omitted)). As the advisory committee notes to Rule 201 explain, "[t]he rule proceeds upon the theory that . . . dispensing with traditional methods of proof [should only occur] in clear cases." Fed. R. Evid. 201(b) advisory committee's note to 1972 amendments. The data from Exhibit A does not meet this standard and should instead be introduced at the summary judgment stage or at trial.

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason; (3) delays that might be reasonable in
> the sphere of economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting delayed action on
> agency activities of a higher or competing priority; (5) the court should also take
> into account the nature and extent of the interests prejudiced by delay; and (6) the
> court need not "find any impropriety lurking behind agency lassitude in order to
> hold that agency action is 'unreasonably delayed.'"

*TRAC*, 750 F.2d at 80 (internal citation omitted) (citation omitted).

As a threshold matter, Plaintiffs argue that *Barrios Garcia* forbids a court from analyzing the *TRAC* factors in deciding whether a plaintiff has sufficiently pleaded an unreasonable delay claim on a motion to dismiss. (Pls.' Resp. Def.'s Mot. Dismiss 4). Plaintiffs assert that a district court case within the Sixth Circuit that found otherwise, *Preston v. Kentucky Consular Center*, failed to apply *Barrios Garcia* and improperly analyzed the *TRAC* factors on a motion to dismiss. *Preston*, 2022 WL 3593052, at *1; (Pls.' Resp. Def.'s Mot. Dismiss 7). Plaintiffs also cite persuasive authority where courts have not dismissed an unreasonable delay claim at the motion to dismiss stage and seem to urge the court to adopt a bright-line rule for declining to evaluate the *TRAC* factors upon a motion to dismiss. "Plaintiffs respectfully urge this court to follow Sixth Circuit precedent as well as the range of other circuits and district courts across the country in declining to evaluate the *TRAC* factors at this stage. . . . This is, after all, what *Barrios Garcia* instructs." (Pls.' Resp. Def.'s Mot. Dismiss 7-8).

The Sixth Circuit has observed that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not *typically* be resolved at that stage." *Barrios Garcia*, 25 F.4th at 451 (emphasis added) (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)). Yet, the Court determined whether a claim of unreasonable delay was properly pled: "we now assess whether Plaintiffs have stated claims upon

which relief can be granted." *Barrios Garcia* 25 F.4th at 451.  After reciting the six *TRAC* factors federal courts apply to an unreasonable delay claim, the Sixth Circuit analyzed the third and fifth *TRAC* factors and ruled that "[b]ased on these factual allegations alone, we hold that all Plaintiffs have sufficiently alleged that USCIS has unreasonably delayed . . . ." *Id*.

Similarly, the *Gonzalez* case cited in *Barrios Garcia* did not bar a *TRAC* analysis.  In Gonzalez, the Fourth Circuit noted that "[o]n this record, however, we lack sufficient information to resolve this issue on a motion to dismiss.  A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Gonzalez*, 985 F.3d at 375.  *Gonzalez* was an appeal of the lower court's dismissal of the unnecessary delay claim for failure to state a claim. *Id*. at 361.  The Fourth Circuit reversed, explaining that "[w]hile the district court's analysis may eventually prevail, it must do so, if at all, at a later stage.  As it stands, Plaintiffs have pled sufficient facts to allege a plausible claim." *Id*.  The court further noted that "the *TRAC* factors offer helpful guidance in this inquiry" on a motion to dismiss, but that it lacked "sufficient information to resolve this issue on a motion to dismiss." *Id*.

The persuasive authority Plaintiffs cite similarly harmonize with the decisions of the Fourth and Sixth Circuit.  *See Velagapudi v. U.S. Citizenship & Immigr. Servs*., No. 4:22-CV-295 SRW, 2022 WL 4447409, at *8 (E.D. Mo. Sept. 23, 2022) ("Thus, looking at just the first two *TRAC* factors, this Court cannot determine whether or not an unreasonable delay exists as a matter of law, especially when there is no statutory requirement to adjudicate within a specific time."); *Gutta v. Renaud*, No. 20-CV-06579-DMR, 2021 WL 533757, at *8 (N.D. Cal. Feb. 12, 2021) ("Whether these allegations have merit and whether USCIS actually follows its purported rule of reason is a question of fact unsuitable for determination at the pleadings stage."); *Moghaddam v. Pompeo*,

424 F. Supp. 3d 104, 117 (D.D.C. 2020) ("At the motion to dismiss stage, . . . such a fact-specific inquiry at this stage would be premature.  However, these factors shed light on what is required for Plaintiffs' claims to survive Defendants' arguments.").  As in *Preston*, the above cases did not relax the pleading standard or find  unreasonable delay claims were exempted from a motion to dismiss, but instead applied the same standard analyzed in every motion to dismiss:  whether a complaint alleges "a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).

Thus, when the Fourth and the Sixth Circuits reiterated that unnecessary claims should not be resolved at the motion to dismiss stage, they were referring to a district court's obligation not to grant a motion to dismiss when there were sufficient allegations in the complaint to state a claim, not holding that the *TRAC* factors were inapplicable to a motion to dismiss.  While Plaintiffs are correct that deciding whether there has been an unreasonable delay "should not be left to Defendant's formulaic recitation of the *TRAC* factors," "a formulaic recitation of the elements of a cause of action will not do."  (Pls.' Resp. Def.'s Mot. Dismiss 7-8); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The question raised by USCIS's motion is whether Plaintiffs have made sufficient allegations in the Complaint to state a claim that USCIS has unreasonably delayed the adjudication of their petitions.  The Court can and must answer that question without discovery. *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  (quoting *Twombly*, 550 U.S. at 557)).

### 1.    *First* **TRAC** *Factor*

The first *TRAC* factor—whether an agency's time to act is "governed by a 'rule of reason'"—has been referred to as the "most important."  *In re Core Commc'ns, Inc.*, 531 F.3d 849,

855 (D.C. Cir. 2008) (citation omitted) ); *see, e.g.*, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003) (deeming first factor the "ultimate issue").  As a sister court has noted:

> Whether the Department has a "rule of reason . . . cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

*Preston*, 2022 WL 3593052, at *21 (citing *Mashpee,* 336 F.3d at 1102).  Accordingly, Defendant must show an "identifiable rationale" governing its decisions.  *Ctr. for Sci. in the Pub. Interest v. U.S. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014).

In their Complaint, Plaintiffs allege three bases why USCIS's process is not governed by a rule of reason.  First, Plaintiffs allege that USCIS does not have a specific "rule of reason" for adjudicating EB-5 petitions because "USCIS does not decide EB-5 visa petitions on a 'first in, first out' basis and it never has."  (Compl. ¶ 110(a)).  Second, Plaintiffs allege USCIS does not have a rule of reason because "USCIS will expedite all Forms I-526 for certain NCEs and regional centers and not others  (Compl. ¶ 110(b)).  Finally, Plaintiffs alleges "USCIS treats regional center projects and direct investment projects differently," and "USCIS regularly adjudicates later-filed Forms I-526 prior to earlier-filed Forms I-526."  (Compl. ¶ 110(c)-(d)).  Defendant asserts that it follows a "visa availability approach" that generally manages petitions in "a first-in, first-out order when a visa is available or will be available soon," but also considers "whether a visa is available or soon to be available to a given petitioner by comparing the petitioner's country of birth."  (Def.'s Mot. Dismiss 5).  Defendant asserts that Plaintiffs' allegation as to the rule of reason thus fails as a matter of law.

11

The majority of courts that have considered USCIS's "visa availability approach" have held that as a matter of law it constitutes a rule of reason governing its processing times for Form I-526 petitions. *See, e.g.*, *Sheiner v. Mayorkas*, No. 21 CIV. 5272 (ER), 2023 WL 2691580, at *6 (S.D.N.Y. Mar. 29, 2023); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021).   The question before this Court then is whether Plaintiffs have plausibly alleged that USCIS failed to follow its rule of reason. *See Fisher v. Renaud*, No. CV 21-2690-DMG (EX), 2022 WL 3574703, at *5 (C.D. Cal. May 15, 2022) ("The courts that have concluded the visa availability approach did not constitute a rule of reason generally reached that conclusion not because the visa availability approach to prioritizing petitions was not a reasonable alternative to first-in, first-out, but based on the plaintiff's allegations that USCIS did not actually follow that approach.").

Plaintiffs argue that even if USCIS has a rule of reason it is not applying that rule when adjudicating petitions, because if it were, "it would have decided Plaintiffs' cases by now, because a visa was immediately available to all of them at the time of filing the Complaint."  (Pls.' Resp. Def.'s Mot. Dismiss 15 (citations omitted)).   Plaintiffs conclude that "[b]ecause the factual allegations in the complaint are sufficiently detailed and all inferences therefrom must be construed in the light most favorable to Plaintiffs, the first *TRAC* factor is in their favor."  (Pls.' Resp. Def.'s Mot. Dismiss 17 (citation omitted)).   This recitation ignores that inferences must be *reasonable*. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).   Although Plaintiffs allege in their Complaint that "USCIS does not decide EB-5 Visa petitions on a "first in, first out" basis, and "it never has," the statement is conclusory.  (Compl. ¶ 110(a)).   The fact that other petitions were decided or expedited before Plaintiffs', or because regional projects and direct investment projects are treated differently, absent more facts, "fail[s] to account for other petitioners in precisely the *same* situation who may have filed their petitions earlier", and does not give rise to a reasonable

inference that the agency lacks a rule of reason. *Thakker v. Renaud*, No. CV 20-1133 (CKK), 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021).

Plaintiffs next allege that USCIS violated its expedite policy by granting a blanket expedite to petitions associated with a specific regional center, the Tryon Center.  (Pls.' Resp. Def.'s Mot. Dismiss 12; Compl. ¶ 126(c)).  Plaintiffs allege that the "IPO issued an *ultra vires* expedite to an EB-5 project which none of the Plaintiffs invested in . . . investors associated with that project were able to receive Form I-526 adjudications in approximately 90 days' time." (Compl. ¶ 126(c)). Further, "USCIS will expedite all Forms I-526 for certain NCEs and regional centers, but not others.  There is no rule of reason controlling which NCEs get blanket expedites."  (Compl. ¶ 110(b)).  Plaintiffs argue that UCCIS failed to follow its own policy because investor visa petitions filed after Plaintiffs' have already been decided, due to how "USCIS inconsistently and unlawfully utilized the expedite process to Plaintiffs' detriment." (Pls.' Resp. Def.'s Mot. Dismiss 34 (citation omitted)).  Plaintiffs' allegations plausibly challenge USCIS's adherence to its own stated policies in this respect.  While Defendant may ultimately be able to establish factual distinctions that explain the apparent divergence from USCIS's stated approach, they have not shown that Plaintiffs' allegations are implausible as a matter of law.  *See Gutta*, 2021 WL 533757, at *8 (plaintiffs alleged that USCIS "arbitrarily expedites Form I-526 petitions for certain [commercial enterprises] and not others. . . . Whether these allegations have merit and whether USCIS actually follows its purported rule of reason is a question of fact unsuitable for determination at the pleadings stage."  (internal citation omitted)).  Finding this allegation plausibly supports the first *TRAC* factor, the Court need not analyze the parties' remaining arguments.  Nonetheless, for the completeness the Court will address the parties' other arguments under this factor.

Plaintiffs also argue that "applicable case law suggests that the Agency *cannot* prove its Rule 12(b)(6) claims that a rule of reason governs adjudications once required to do so at the summary judgment stage." (Pls.' Resp. Def.'s Mot. Dismiss 16).  While Plaintiffs cite *Solis v. Cissna*, No. CV 9:18-00083-MBS, 2019 WL 8219790 (D.S.C. July 11, 2019), that case involved a ruling at the summary judgment stage, not a motion to dismiss.  In *Solis*, USCIS was unable to provide sufficient evidence that it was following a rule of reason, but at the motion to dismiss stage a defendant does not need to demonstrate such evidence.  *See Solis*, 2019 WL 8219790, at *18. Instead, it is the burden of the plaintiff to sufficiently allege USCIS does not have a rule of reason governing adjudication of petitions.

Plaintiffs next argue that regardless of whether USCIS was generally following a rule of reason, it "unlawfully withheld action on Plaintiffs' Form I-526 petitions for more than eight months.  . . . Defendant stopped adjudicating regional center-based Forms I-526 from July 1, 2021[,] through at least March 12, 2022 . . . ." (Pls.' Resp. Def.'s Mot. Dismiss 18).  The parties disagree over whether those eight months are excluded from the calculation of how long petitions have been pending.  Plaintiffs assert that USCIS insinuated in another case "that the Regional Center Program itself did not sunset," and therefore that time should be counted; Defendant contends that "USCIS lacked authority to approve regional center-based I-526 Petitions" during those eight months and should not be counted.  (Pls.' Resp. Def.'s Mot. Dismiss 18-19; Def.'s Mot. Dismiss 14).  Plaintiffs also allege that a lack of resources is no defense to Plaintiffs' claim that there is no rule of reason.  (Pls.' Resp. Def.'s Mot. Dismiss 19).  Finally, Plaintiffs argue that "[p]rocessing times say nothing about whether a rule of reason governs this adjudication," and that the average time a petition takes to be adjudicated should not be considered in deciding whether there is a rule of reason.  (Pls.' Resp. Def.'s Mot. Dismiss 21).

As a threshold matter, courts faced with this question have observed that the plain language of Section 610[7] did not authorize USCIS to set aside visas for the Regional Center Program between June 30, 2021, and March 15, 2022.  *See Mokkapati v. Mayorkas*, No. 21-1195, 2022 WL 2817840, at *6 (D.D.C. July 19, 2022) ("USCIS was unable to act on plaintiffs' petitions . . . given the lapse of statutory authorization for the Regional Center Program between June 2021 and March 2022."  (citation omitted)); *Sharifullin v. Blinken*, No. 21-728, 2022 WL 558191, at *3 (D.D.C. Feb. 24, 2022) (dismissing request for adjudication on EB-5 application because Regional Center Program expired on June 30, 2021, and courts "cannot compel USCIS to do what Congress has not authorized it to do."  (internal quotation marks omitted) (citation omitted)); *Bromfman v. USCIS*, No. 21-cv-571 (BAH), 2021 WL 5014436, at *2 (D.D.C. Oct. 28, 2021) ("[T]he Regional Center Program's statutory authorization reached its sunset on June 30, 2021.  Congress ha[d] yet to reauthorize the program [as of October 2021].").

Plaintiffs allege no rule of reason governs the adjudication of petitions because the eight-month pause in adjudications unlawfully withheld agency action.  (Compl. ¶ 116).  The only question before this Court as to this allegation is whether Section 610 established the authority and obligation for USCIS to continue adjudicating and processing Forms I-526 for the Regional Center Program after June 30, 2021.  As noted above, the statute's plain language answers that question in the negative, and it is therefore irrelevant what USCIS argued in *Behring Regional Center LLC v. Mayorkas*, No. 22-cv-02487-VC, 2022 WL 2290594 (N.D. Cal. June 24, 2022).  (Pls.' Resp. Def.'s Mot. Dismiss 17-18).  The issues before the court in *Behring* were whether USCIS had the authority to regulate existing regional centers during the authorization gap, and whether it could

---

[7] Section 610 is the portion of the Immigration and Nationality Act in which Congress set the authorization period for the Regional Center Program.  Act of Oct. 6, 1992, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874 (1992) (codified at 8 U.S.C. § 1153).

process I-829 forms during the authorization gap. Plaintiffs challenge neither authority here, nor the arguments surrounding them, and *Behring* is therefore inapposite. *Behring Reg'l Ctr. LLC*, 2022 WL 2290594, at \*5. To the extent that Plaintiffs assert a judicial-estoppel challenge, alleging that USCIS's position is "hypocrisy . . . argu[ing]that the purported eight-month lapse should not count towards Plaintiffs' delay while simultaneously failing to negate the Agency's positioning that the program did not lapse," the argument fails. (Pls.' Resp. Def.'s Mot. Dismiss 18). As explained by the court in *Da Costa v. Immigration Investor Program Office*, 634 F. Supp. 3d 1 (D.D.C. 2022), USCIS's purported position was "that § 610(b) sets an expiration date only for the setting aside of visas; § 610(a), meanwhile, 'creates the program and is the source of authority to regulate regional centers' and has no expiration date." *Id*. at 11 (citation omitted). This Court does not decide whether that is the correct interpretation of Section 610(a), but it is at least consistent with USCIS's position in this case.

Even if this Court found that USCIS has a rule of reason as a matter of law, Plaintiffs have alleged sufficient facts to bring into question whether this rule of reason actually governs the adjudication of I-526 petitions. The Court finds that this first factor weighs in favor of Plaintiffs.

## 2. *Second* **TRAC** *Factor*

The second factor asks whether Congress has provided any timetable for agency action. 8 U.S.C. § 1571(b) states that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ." Although this timeline is not binding and an unreasonably delayed analysis "does not rise and fall on a statutory deadline," Congress has expressed that "immigration-benefit applications should be adjudicated within six months." *Barrios Garcia*, 25 F.4th at 454. Even so,

"[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).

Plaintiffs allege that the second *TRAC* factor weighs in their favor because "Congress indicated it should take less than six months to act on [I-526] petitions, yet Plaintiffs' I-526 petition[s] have been pending for significantly longer." (Compl. ¶ 118). Even though that deadline is not mandatory, Plaintiffs allege that it serves as "a benchmark for the unreasonableness of USCIS's delay in adjudicating Plaintiffs' I-526 petitions." (Compl. ¶ 119). Although no bright lines have been drawn in this context, "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (alteration in original) (quoting *Yavari v. Pompeo*, No. 19-cv-02524 (SVW-JC), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)). Courts have found that "similar and even greater delays than a forty-two-month delay are insufficient to warrant emergency relief . . . .'" *Zaman v. U.S. Dep't of Homeland Sec.*, No. 19-cv-3592 (ABJ), 2021 WL 5356284, at *6 (D.D.C. Nov. 16, 2021) (citation omitted).

Many courts treat the language "[i]t is the sense of Congress" as precatory and non-binding. *See, e.g.*, *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 961-62 (9th Cir. 1999) ("[T]he sense of Congress provision amounts to no more than non-binding, legislative dicta."). The Court recognizes that "Congress has expressed that "immigration-benefit applications *should* be adjudicated within six months." *Barrios Garcia*, 25 F.4th at 454 (emphasis added). Yet, the Court cannot ignore that 'the sense of Congress' does not impose a mandatory requirement but only indicates the speed at which the Department should operate. To date, the four remaining Plaintiffs' petitions have been pending for approximately 45 to 51 months, even if the Court did not exclude the eight-month sunset period. (Compl. ¶¶ 65, 71, 83, 95, 101). Without an obligatory deadline

from Congress, other courts have held that a forty-two-month delay–or greater–delay is insufficient to warrant emergency relief, and the delay in this case has therefore yet to cross the line from reasonable to unreasonable.  The Court finds that this factor tips in favor of Defendant.

### 3.   *Third and Fifth* TRAC *Factors*

The third and fifth *TRAC* factors, which both consider the effects of the delay, "run together."  *Preston*, 2022 WL 3593052, at \*23 (citing *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)).  "The third instructs that delays may be 'less tolerable when human health and welfare are at stake,' and fifth tells courts to consider 'the nature and extent of the interests prejudiced by the delay.'"  *Id*. (quoting *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 94 (D.D.C. 2022)).

Plaintiffs allege that they are unable to make plans for themselves and for their families relating to employment and schooling and that the delay in adjudication has caused anxiety. (Compl. ¶¶ 73, 85, 103).  Defendant asserts that these allegations are not sufficient, comparing the facts in this case to *Telles v. Mayorkas*, No. 21-395 (TJK), 2022 WL 2713349 (D.D.C. July 13, 2022), where the plaintiff alleged that the delay was "causing him considerable expense, stress, and uncertainty," he was harmed because he could not "move forward with his life in the United States," and "beyond the vague and conclusory reference to 'stress,' his allegations point to only economic harm." *Id*. at \*4.  In contrast, Plaintiffs in this case have not just alleged economic harms or made vague references to "stress," but specifically allege harms to the well-being of their family and mental health, and these kinds of personal interests are "undeniably significant."  *Ramirez*, 594 F. Supp. 3d at 94 (quoting *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020)). Defendant argues that these concerns are inherent to the immigration process and "do not justify moving Plaintiffs to the front of the line," ahead of others likely experiencing the same feelings. (Def.'s Mot. Dismiss 22).  Even if it were true that other applicants awaiting adjudication of

18

immigrant visas are suffering the same kind of harm to health and welfare, this argument more properly goes to the fourth factor—which focuses on whether plaintiffs are seeking improperly to jump in line.  Plaintiffs have sufficiently alleged that human health and welfare are at stake, and so the third factor is plausibly alleged.

Turning to the fifth factor, Defendant contends that there is no guarantee that Plaintiffs' I-526 petitions will be approved or if they will be determined to be eligible for any of the other steps of the immigration process.  (Def.'s Mot. Dismiss 23).  As a result, Defendant argues that Plaintiffs' claims that the delay in processing the petitions deprives them of the ability to immigrate to the United States, or ultimately become naturalized, are therefore speculative.  (Def.'s Mot. Dismiss 23).  The allegation that the delay deprives Plaintiffs of the ability to immigrate goes to the heart of an unreasonable delay claim; the gap between when the petition was filed and when the agency will finish adjudicating the petition is in and of itself the harm alleged.  Plaintiffs need not allege that their I-526 petition is guaranteed to be approved to allege prejudice to their interests.  At this stage of the case, Plaintiffs must only allege that their interests have been prejudiced, and Plaintiffs have sufficiently alleged facts to meet the fifth factor.

### 4.   *Fourth* TRAC *Factor*

The fourth factor "requires a court to account for the effects of expedited action on 'agency activities of equal or greater priority.'"  *Preston*, 2022 WL 3593052, at *23 (quoting *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021)).  "The D.C. Circuit has 'refused to grant relief, even though all other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain.'"  *Preston*, 2022 WL 3593052, at *23 (quoting *Mashpee,* 336 F.3d at 1100).  This is because "[c]ourts are generally hesitant to reorder[] agency priorities" when there is no basis "to

think that judicial intervention would advance either fairness or Congress's policy objectives." *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-01932 (DLF), 2023 WL 2913645, at \*5 (D.D.C. Apr. 12, 2023) (quoting *In re Barr Labs., Inc.*, 930 F.2d 72, 75-76 (D.C. Cir. 1991)).

Plaintiffs argue that *Barrios Garcia* distinguishes *Mashpee* and rejected a "line cutting" rationale for deciding the fourth factor. (Pls.' Resp. Def.'s Mot. Dismiss 29). Plaintiffs echo their arguments for the first *TRAC* factor and assert that there is "no line cutting, no higher priority" because Defendant has "adjudicated plenty of cases filed after Plaintiffs' (at least 429)." (Pls.' Resp. Def.'s Mot. Dismiss 29). Plaintiffs also argue that because USCIS has adjudicated "hundreds of Forms I-526 for investors who had filed after Plaintiffs," even if there was a processing line, Plaintiffs have "moved backwards in line to their detriment." (Pls.' Resp. Def.'s Mot. Dismiss 27 (citation omitted)). Thus, Plaintiffs argue that they cannot be line-jumping because there is no line, and if there is a line, their place is at the front because they belong there—not because they are jumping to the front of the queue. Defendant contends that this argument "fail[s] to account for other petitioners in precisely the same situation who may have filed their petitions earlier." (Def.'s Mot. Dismiss 13-14 (internal quotation marks omitted) (citation omitted)).

In *Mashpee*, each petition was evaluated "against a demanding set of regulatory criteria by a three-person team comprising an historian, a cultural anthropologist, and a genealogist," and one of the plaintiffs in *Mashpee* had been waiting for five years. *Mashpee*, 336 F.3d at 1100. In contrast, the Sixth Circuit pointed to a plaintiff in *Barrios Garcia* who had also been waiting for five years and observed that, unlike as in *Mashpee*, "USCIS does not deploy a team of academics to apply sophisticated regulatory criteria to U-visa applications; nor does the adjudication of a single application take years." *Barrios Garcia*, 25 F.4th at 454. The Government cannot be the

20

sole arbiters of what constitutes an unreasonable delay, as that argument "would eliminate federal judicial review of any agency action and wipe the APA off the books." *Id.* But while the court cautioned against blindly deferring to the Government merely because it was best positioned to manage resources, it did not instruct that whether placing a plaintiff "at the head of the queue would simply move all others back one space and produce no net gain" was irrelevant to the analysis. *Id.* (citation omitted). The Sixth Circuit simply observed that "[a]t the Rule 12(b)(6) stage, we cannot conclude that the U-visa-application determination and the bona-fide adjudication are 'extremely complex and labor-intensive task[s]'" that would justify the years the plaintiffs had waited. *Id.* (second alteration in original) (quoting *Mashpee*, 336 F.3d at 1100).

Plaintiffs also argue that the Court "could potentially provide relief by compelling USCIS to increase its processing rate, thus producing 'net gain' for I-526 petitioners as a group." (Pls.' Resp. Def.'s Mot. Dismiss 29 (quoting *Jingjing Liu v. Mayorkas*, No. 20-CV-654 (CRC), 2021 WL 2115209, at *5 (D.D.C. May 25, 2021))). But unlike in this case, the plaintiffs' core theory in *Liu* was "not that USCIS assigned him the wrong place in line, but that the line as a whole is moving too slowly due to USCIS's alleged effort to increase processing times." *Liu*, 2021 WL 2115209, at *5 (citation omitted). The court held that "*[i]f this contention is true,* then the Court could potentially provide relief by compelling USCIS to increase its processing rate . . . ." *Id.* (emphasis added) (citation omitted). Plaintiffs "take issue that there is a 'line' at all" but that even if there were a line, "Plaintiffs were moved backwards . . . ." (Pls.' Resp. Def.'s Mot. Dismiss 25). Plaintiffs' theory is that USCIS has assigned them the wrong place in line, asserting that later-filed petitions were decided before their petitions, and thus there is no higher priority that they are cutting in front of. (Pls.' Resp. Def.'s Mot. Dismiss 29). But Plaintiffs do not allege "any unique considerations that warrant an expedited review of [their] petition," nor do they argue that USCIS

"has treated [them] differently than any of the other petitioners who are facing similar circumstances." *Palakuru*, 521 F. Supp. 3d at 52 (internal quotation marks omitted) (quoting *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020)).  Plaintiffs argue as a general matter, later-filed petitions have been decided while theirs has not.  But Plaintiffs have not alleged that that others in a similar situation received a decision before them.  Absent those facts, granting Plaintiffs' requested relief "would simply move [them] ahead in the processing queue to the detriment of other similarly situated visa applicants." *Desai v. U.S. Citizenship & Immigr. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *7 (D.D.C. Mar. 22, 2021).  Accordingly, the Court finds that the fourth *TRAC* factor weighs in favor of Defendant.[8]

### 5.   *Sixth* **TRAC** *Factor*

Finally, the sixth *TRAC* factor notes that the "Court need not find any impropriety lurking behind agency lassitude in order to hold the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.  Even so, Plaintiffs assert that they have alleged "seven examples of affirmative actions taken by Defendant to purposefully delay" EB-5 adjudications.  (Compl. ¶ 28).  Plaintiffs' factual allegations that Defendant is acting in bad faith can be summarized as:  Defendant (1) knows processing times are too long and has failed to shorten them; (2) processes 54 times fewer petitions compared to 4 years ago; (3) expedited review of an EB-5 project that Plaintiffs had not invested in; (4) USCIS refuses to accept inquires for cases pending within a "normal processing time," including several years; (5) the stated processing times for I-829 petitions went from 36.5 to 234

---

[8] Plaintiffs maintain that "Defendant has clearly not met her burden which would allow the Court to "conclude *beyond doubt* that the plaintiff[s] can prove *no set of facts* in support of [their] claim[s] which would entitle [them] to relief." (Pls.' Resp. Def.'s Mot. Dismiss 30 (quoting *Carver v. Bunch*, 946 F.2d 451, 452 (6th Cir. 1991))).  The Supreme Court has now explained, however, that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

to 33 to 59 months in the span of one month; (6) USCIS failed to process I-526 petitions during the sunset of 610(b); and (7) Defendant's employees have misrepresented EB-5 policy in defense of other lawsuits. (Compl. ¶ 126(a)-(g)). Even taken as true and viewed in the light most favorable to Plaintiffs, these facts fail to plausibly allege a lack of good faith in the processing of I-526 petitions by Defendant, and they do not plausibly allege affirmative actions taken in bad faith to purposefully delay the processing of I-526 petitions. While Defendant may not be processing visas at the Plaintiffs' preferred pace, Plaintiffs have not sufficiently alleged bad faith. As *TRAC* directs, though, the lack of plausible allegations of impropriety does not weigh against Plaintiffs. This factor is thus neutral and does not alter the Courts analysis as to whether Plaintiffs have plausibly alleged a claim for unreasonable delay

Upon review of all six *TRAC* factors, the Court finds that the Complaint sufficiently pleads a claim for unreasonable delay. The absence of justification for expediting the processing of Plaintiffs' petitions at the expense of other similarly situated petitioners and the fact that Congress has not mandated a timeline for processing tend to favor USCIS. Yet, the "most important' factor, whether USCIS follows a rule of reason in processing I-526 petitions, falls in favor of Plaintiffs. The third and fifth factor also weigh in Plaintiffs' favor because their interests, health, and welfare are at stake. The sixth factor is neutral and does not tip the scale one way or the other. When a plaintiff has sufficiently alleged that a rule of reason is not governing I-526 petition adjudication, determining whether USCIS has unreasonably delayed is "unsuitable for determination at the pleadings stage." *Gutta*, 2021 WL 533757, at *8; *see also Nadhar v. Renaud*, No. CV-21-00275-PHX-DLR, 2022 WL 684338, at *4 (D. Ariz. Mar. 8, 2022) ("The first *TRAC* factor carries the most weight. It also exposes the questions of fact that remain live in this matter, which favor denying the motion to dismiss." (internal citation omitted)).

V.    <u>**CONCLUSION**</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 12) is **DENIED** and Plaintiffs' Motion to Exceed Page Limit (DN 13) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

September 25, 2023

cc:    counsel of record

24